**Fern WHITE, Appellant,**

**v.**

**Leroy McCANN and Alice McCann, Respondents.**

**No. 50610.**

Supreme Court of Missouri,

Division No. 1.

April 12, 1965.

Motions for Rehearing and to Transfer to Court En Banc Denied May 10, 1965.

Robert Stemmons, Mt. Vernon, for appellant.

Moore, Pettit & Steinle, J. Hal Moore, Walter S. Pettit, Jr., Jack P. Steinle, Aurora, for respondents.

HIGGINS, Commissioner.

Fern White, plaintiff, sued Leroy McCann and Alice McCann in ejectment, and the defendants counterclaimed in ejectment and for cancellation of deeds. The judgment and decree favored defendants and by it two deeds, a deed of trust and an agreement, all involving title to real estate, were canceled and set aside. Plaintiff has appealed.

On September 25, 1961, Fern White and Leroy and Alice McCann entered into a written agreement, Exhibit II, which recited that Fern White owned a 40-acre tract in Greene County, Missouri, and that Leroy McCann and his wife, Alice McCann, owned certain lots in Halltown, Lawrence County, Missouri. Both properties were legally described and the parties agreed to execute warranty deeds to accomplish an exchange of them. The agreement recognized also that a tavern on the Fern White property was the subject of a lease, and made provision respecting possession of the tavern. That provision is at the heart of this litigation and is set out later in connection with defendants' pleading.

The property at Halltown was improved by a service station and a dwelling house, and Leroy McCann operated a gasoline service station on the premises. The 40-acre tract in Greene County was improved by a tavern, some cabins, and a dwelling house. The tavern was located where U. S. Highway 160 crosses the Sac River and thus the name, Sac River Tavern.

On October 4, 1961, the parties met at the home of Jack L. Hobson, an attorney, and Mr. Hobson prepared the deeds called for by the contract. The deeds were executed by the grantors and their acknowledgments were taken by Mr. Hobson. Exhibit A is the deed from the McCanns to Mrs. White, and Exhibit B is the deed from Mrs. White to the McCanns. Upon this same occasion, Mr. Hobson prepared a note called for by the agreement and he also prepared a deed of trust, Exhibit C, which was executed by the McCanns along with the note to secure payment of the note, the security being the real estate deeded by Mrs. White to the McCanns. The amount of the note, $7,500, was the sum agreed to be the difference in value of the properties exchanged. The deeds and deed of trust were drawn by inserting dates, names, amounts, and descriptions into appropriate blank spaces in standard stationers' printed forms. They contain no covenants, conditions, restrictions, or warranties, other than those regularly provided in such standard forms. They were delivered by an exchange at the Hobson home, Mrs. White receiving the deed to the Halltown property and the deed of trust and note on the Sac River property, Exhibits A, C, and D; the McCanns receiving the deed to the Sac River property, Exhibit B. There was evidence received over objection that the attorney told the parties not to record the deeds until possession of the tavern was delivered. Nevertheless, on October 6, 1961, defendants caused their deed to the Sac River property to be recorded in Greene County, Missouri, and on October 9, 1961, plaintiff caused her deed to the Halltown property to be recorded in Lawrence County, Missouri. On October 10, 1961, plaintiff caused the deed of trust on the Sac River

property to be recorded in Greene County, Missouri.

The original tavern lease mentioned in the agreement to exchange properties is in evidence as Exhibit E; an executed copy of the lease is Exhibit 2. These exhibits are identical except that the original lease describes the lessee as "Gene Elsey, of R.F.D., Ash Grove, Missouri," where the copy shows the name "Gene Elsey" stricken and "Riverside Cafe & Package Store, Inc.," inserted. The evidence conflicted as to when the change was made, but both exhibits show execution by Gene Elsey, R.F.D., Ash Grove, Missouri, as lessee. The lease was for one year from July 1, 1961, unless terminated sooner by other provisions. The lessee agreed not to sublet without written consent of the lessor, and lessor was entitled to repossess upon lessee's failure to pay rent. The lessor gave no consent to sublet, and the lessee failed to pay rent. On October 24, 1961, Mrs. White obtained judgment against Gene Elsey for possession. She then learned that a Jim Barrett claimed possession, and she obtained judgment for possession against him November 7, 1961. She then learned from Barrett that the original business of Gene Elsey had become incorporated and she caused notice to vacate, Exhibit I, to be served on Mack F. Grayson, individually, and as the managing officer of the corporation. Neither Elsey nor Barrett went to the tavern after the judgments were entered; Grayson left the tavern November 14, 1961, and returned in February 1962, only to look in the window. The tavern was never reopened or reoccupied. Mrs. White had her own padlocks put on the tavern November 19, 1961, and there is evidence that she tendered the keys to Mr. McCann on two different occasions, November 20, 1961, and the day after Thanksgiving, 1961. Mr. McCann had been at the tavern November 11, 1961, on which occasion he was in a fight and received bruises and a head wound which required fourteen stitches. On December 5, 1961, the McCanns wrote to Mrs. White: "In view of the fact you have been unable to deliver possession of the premises within the sixty (60) days as provided by the contract, I therefore request a deed back of my property and I will return a deed to you of yours."

Prior to this turn of events, the McCanns had moved some furniture and machinery to the Sac River property, painted woodwork, graded and graveled the driveway, had electricity connected, and secured insurance on the property. After the fight on November 11, 1961, around the first part of December, Mr. McCann went to the house to get his furniture.

Mr. McCann operated the service station until the first part of 1963, when the highway was relocated, and although he vacated the Hallsville house April 1, 1963, he had some furniture and personal property there when Mrs. White moved in September 14, 1963. The McCanns have made no payments on the note.

Plaintiff, by her petition in ejectment of February 14, 1962, asserted that she was entitled to the Halltown premises as of October 4, 1961, the date of the deed by which defendants conveyed such premises to her. Defendants filed a general denial and a counterclaim. The counterclaim was amended at time of trial, October 24, 1963, to reflect Mrs. White's occupancy of the Halltown property. Defendants attached the agreement for exchange of properties as an exhibit to their pleadings and alleged: "As a part of the aforesaid Agreement, plaintiff and defendants had drafted, each for the other, a Warranty Deed to the land to be exchanged pursuant to Exhibit 'A'; * * * these Deeds were exchanged with the delivery being expressly conditioned upon the subsequent fulfillment of the last paragraph in the Agreement, which reads as follows:

"'Its (sic) is agreed that the Tavern loacted (sic) on the Fern White property is now the subject of a lease which is in default and possession of

the premises have been demanded it is mutually agreed that in the event court action is essential to secure possession of same that said Fern White shall have until the termination of such litigation to deliver possession not exceeding 60 days, but as to all other properties possession shall be at the time of executing the deed, except McCann may continue to operate his present business until possession of the tavern is given.' "

Defendants then allege a failure of plaintiff to deliver the possession mentioned, and in view of plaintiff's present possession of the Halltown property, allege an entitlement to possession of that property as of September 14, 1963. Their prayer is for possession of the Halltown property and for a decree canceling the instruments executed pursuant to the agreement to exchange properties.

By reply, plaintiff alleges, among other things, that the part of the agreement set out in paragraph 2 of the counterclaim does not constitute a condition upon which the relief sought by defendants can be granted. Plaintiff also denies defendants' allegations of entitlement to possession of the Halltown property.

At the close of all the evidence plaintiff moved for a directed verdict as a matter of law. The motion was denied and the cause was submitted to a jury which, under the instructions of the court, returned verdicts on the petition and counterclaim for defendants for possession of the Halltown property. The court entered a "Judgment and Decree" which, after reciting the jury verdicts, proceeded: "In accordance with said verdicts, the Court finds that the allegations in defendants' First Amended Counter-Claim are true and that defendants are entitled to the relief therein prayed." The court then adjudged possession of the Halltown property to defendants and decreed that the agreement for exchange of properties and the two deeds and the deed of trust and note ex-

changed pursuant to the agreement be set aside.

Plaintiff filed after-trial motions to set aside the judgment and decree and to enter judgment for plaintiff in accordance with the motion for directed verdict and for new trial. Among other things, they asserted that the provision in the agreement set forth in the counterclaim does not contain a condition upon which to grant the equity of setting aside deeds which were exchanged pursuant to the agreement and which were absolute and without conditions, and that plaintiff was entitled to possession of the Halltown property as a matter of law. The motions were unavailing and this appeal followed, the substance of appellant's contentions on appeal being those mentioned above in describing the after-trial motions.

■ There are matters both at law and in equity in this case. As to those matters in equity it is our duty to review the cause de novo, and in doing so we weigh the competent evidence and reach our own conclusions as to the facts. Haer v. Christmas, Mo., 312 S.W.2d 66, 68 [1].

The deeds exchanged between the parties contained no conditions and were thus absolute and effective for all purposes unless the agreement set forth by respondents in their counterclaim contains a condition which gives rise to an action to set them aside. The counterclaim makes no reference to any other agreement, written or oral; therefore, we need look only to the agreement to determine the existence of any conditions affecting validity of the instruments in question. When the paragraph in question is analyzed a number of things become apparent. First is the agreed recognition of the lease of the tavern building on the Fern White property and that it is in default. Next is a provision for time in which to bring any court action necessary to delivery of possession of the tavern. Then follows a provision that *as to all other properties possession shall be at the time of executing the deed."*

(Italics ours.) The deeds and instruments in question were all executed October 4, 1961, and were thereafter exchanged and recorded. No conditions or restrictions affecting possession, title, or delivery were placed in the deeds. After the exchange respondents moved furniture to the house and machinery to the grounds on the 40-acre tract, had electric power connected, did work on the premises, and insured the improvements. At this same time, appellant was entitled to the Halltown premises "except McCann may continue to operate his present business until possession of the tavern is given." By this last provision, possession of the service station only was to be withheld from appellant until possession of the tavern had been settled. Thus, the only condition or limitation in the agreement pertained to possession of the tavern and service station. Nowhere is there any provision for avoiding the exchange of properties or for canceling the deeds and other instruments by which the exchange was accomplished, nor was there any provision which could operate to forfeit or cancel the deeds.

Respondents contend that the paragraph in question constituted a condition precedent to the vesting of title or validity of delivery of the deeds citing the definition from Black's Law Dictionary: "A condition precedent is one which must happen or be performed before the estate to which it is annexed can vest or be enlarged; or it is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed. * * * A 'condition precedent' is one that is to be performed before the agreement becomes effective, and which calls for the happening of some event or the performance of some act after the terms of the contract have been agreed on, before the contract shall be binding on the parties." Black's Law Dictionary, Fourth Edition, p. 366. That same authority defines a condition subsequent as "one annexed to an estate already vested, by the performance of which such estate is kept and continued, and by the failure or non-performance of which it is defeated; or it is a condition referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, if he chooses to avail himself of the condition." It is not necessary for us to distinguish between these two types of conditions because the distinctions do not affect the result in this case. No matter what the language here is termed, be it condition precedent or condition subsequent, it is not concerned with the vesting of title or delivery of the deeds. At most, the provision or condition is that Mr. McCann may continue to operate his service station in Hallsville until possession of the Sac River Tavern is made available to him.

■ Respondents' action to set aside deeds must fail because all instruments were to be exchanged pursuant to the agreement; they were so exchanged and there is no condition there which voids the absolute quality appearing on the face of each instrument.

■ Respondents argue that they proved "a conditional delivery of the deeds as plead[ed]," and make reference to evidence received over objection to support this contention. Mr. McCann testified over objection that "She (Mrs. White) said that if she had any trouble in getting possession of her property, then our whole deal would be off and we wouldn't trade properties." "The understanding was that if she could not give us possession of the property within sixty days that we would have no trouble whatsoever, and that our place in Halltown would come back to us by deed, and we would deed the tavern property back to her." In like manner Mrs. McCann testified over objection that "She (Mrs. White) said if she couldn't give us possession in sixty days that the whole deal would be off." Appellant's objections to this line of testimony were that

receipt of such evidence would be a violation of the parol evidence rule. 32A C.J.S. Evidence §§ 851, 901, pp. 211, 257. We agree. Respondents, in making this point, refer again to their pleading which is bottomed upon, and refers to, a specific written agreement and, having thus adopted and relied upon such agreement, they cannot now modify or vary its effect and its terms by parol evidence. And, in view of appellant's persistent and timely objections to this line of testimony, there was no consent to the trial of any issue that may have been thus raised outside the pleadings so as to permit application of Civil Rule 55.54, V.A.M.R.

Turning to the ejectment issue in this cause, we note again that appellant grounded her right to possession on the deed by which she obtained the property from respondents and that respondents' action in ejectment is grounded on the same allegations as the action to set aside deeds. The analysis and construction of the paragraph in question is again the governing factor. By that analysis appellant was, under her deed and as a matter of law, entitled to possession of all of the Halltown properties subject to the provision for Mr. McCann to continue his service station until possession of the Sac River Tavern was available to him. At no time after October 4, 1961, were respondents entitled to deny appellant possession of the Halltown properties except the service station, and this right would cease upon delivery of possession of the tavern. Likewise, appellant could not deny possession of the 40-acre tract to respondents except as all parties recognized that a portion of those premises was subject to a lease. The parties made provision to govern matters of possession and such provision cannot be enlarged to defeat title to real estate. Neither can it be broadened to withhold possession of any properties not mentioned or to withhold possession of any properties beyond the time limited in the provision. It is not contended here that the right of possession under the lease of the tavern did not expire with the lease on June 30, 1962, irrespective of judgments or other provisions which may have effected an earlier termination and delivery of possession. As a matter of law, then, the right of Mr. McCann to retain possession of the service station would have terminated at that same time if not by an earlier delivery of possession of the tavern to him.

Under our construction of the agreement the judgment is erroneous because it undertakes to award possession of properties to one other than the record title holder at a time when such party no longer has any right to any portion of the premises. Appellant has the legal title to the whole premises by virtue of the deed from respondents, and respondents' right to retain possession of any part of the premises by virtue of the agreement terminated at the latest on June 30, 1962. Appellant is thus entitled to possession of her premises as a matter of law and the judgment in ejectment must also be reversed.

Accordingly, the judgment is reversed and the cause is remanded with direction to set aside the decree which purports to cancel the two deeds, deed of trust, note, and agreement discussed in this opinion, and with further direction to enter judgment for appellant for possession, and to accord her a new trial on the issue of damages.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.